## TAYLOR AND ANOTHER *vs.* ELY AND OTHERS.

A representation which estops the party making it from denying its truth, must not only have misled the party to whom it was made, but have been intended so to mislead him ; or at least there must have been such culpable negligence or carelessness as may be regarded as amounting to an intention to mislead.

And the same is true, where a party by his silence, which is only one mode of making a representation, has misled another, as to the matter not communicated.

To make the silence of a party operate as an estoppel, the circumstances must be such as to render it his duty to speak.

Therefore where W. who was building a house for E. under a written contract, assigned the contract while the house was unfinished to T. to secure an indebtedness to him and also assigned his lien on the premises, at the same time stating to T. that there would be $1,500 due him from E. on the contract when the house was completed, and T. at once called on E. and enquired if the statement was true, informing him of the assignment of the contract and of his proposal to complete the house, to which E. replied that, if T. took the contract to finish he must do so at his own risk, and entirely upon W's representations, and declined to inform him as to the state of his account with W.; upon which T. proceeded to complete said house at a considerable outlay of his own funds, E, being present very frequently while the work was going on, but giving him no further information on the subject of his accounts with W., it also appearing that E. supposed he was somewhat indebted to W. and had been informed that T. had security for the cost of completing the house; it was held, on a bill in equity brought by T. as the assignee of W. against E. and others for a foreclosure upon said lien, that E. was not estopped from claiming that W. had been overpaid by him before the assignment of the contract to T. and that nothing was due under the contract. [Waite, Chief Justice, dissenting.]

This was a bill in chancery brought by Edwin Taylor and James Bartholomew, partners under the name of E. Taylor & Co., for a foreclosure of a mechanics lien upon a dwelling house built for Ely & Co., the principal defendants, under a contract between said Ely & Co., and one Benjamin S. Withey, which lien the plaintiffs claimed to hold under an assignment from Withey.

The cause was referred to a committee, who at the term of the superior court holden in Hartford, in January 1855, made their report, embracing the following facts.

On the 27th day of May 1851, said Ely & Co. entered into a contract in writing with said Withey, for the alteration and repairing of a dwelling-house belonging to them, for the sum of $2,875, to be paid from time to time as the work progressed.

By reason of certain agreed variations from the contract, the amount of the cost of said alterations and repairs was $2,664.66, if no deduction was made for damages for deficiency in materials or workmanship; but the materials and workmanship of said building did not correspond with the written contract and the damage to Ely & Co. in consequence thereof, was five hundred dollars.

About the first of November 1851, while this work was unfinished, Ely & Co. entered into another contract with Withey, in writing, which was to take effect from the 15th of October 1851, by the terms of which for four thousand dollars, Withey was to build another house for them called the south or new house, which was to be finished by the first of April 1852. Withey commenced the new building about the first of November 1851, and continued to work thereon until about the 23rd of March 1852, when, having become embarrassed, and being considerably indebted to the plaintiffs for lumber furnished principally for said houses, he assigned to them the last named contract, with all sums of money due thereon. At the date of said assignment there was due the plaintiffs from Withey $717.82, and with the view of securing that debt, and with a full belief that there would be a sufficient balance due from the said Ely & Co. to Withey, when said building should be finished, to pay said debt and the expense of completing said building, the plaintiffs proceeded at their own expense to complete the same, and advanced various sums of money, and furnished materials and labor therefor, amounting to $1,230.50.

On the 7th of September 1852, Withey, having a valid lien on said house and the land belonging thereto, lodged with the town clerk of the town of Hartford, a certificate claiming that $1,500 was due to him from the said Ely & Co., and that the same was assigned and belonged to the plaintiffs.

On the first of January 1852, Ely & Co. had paid to Withey $3,192.09, and about that time rendered an account thereof to Withey, with the following entry thereon, "no entry made of advances for new house, (meaning the south house,) except as entered in said account above," referring to an item of $92.07 charged to account of the new building. It also appeared that between November 8th, 1851, and January 1, 1852, orders were drawn by Withey on Ely & Co., and paid by them for sums amounting to $575.77.

After January 1st, 1852, Ely & Co. paid on account of the new house $3,000, which with the sums previously men-

Taylor and another *v.* Ely and others.

tioned embraces all that was paid by Ely & Co. to Withey, on either contract.

The committee also found, that the damages sustained by the defendants by reason of said new building not being completed at the time specified in the contract, was not less than two hundred dollars, and that the damages sustained by reason of said Withey's failure to comply with said contract in respect to the quality of materials furnished and work done thereon, was four hundred dollars: and that at the time of the assignment of said contract to the plaintiffs, the defendants had paid to said Withey, the sum of two hundred and seven dollars and eighty-four cents more than the whole amount that would have been due on said contract, on the completion of the same.

At the time said contract was assigned to Taylor & Co., Withey represented to them that $1,500 would be due him from Ely & Co. on said contract, when the south house should be completed. On the day said contract was assigned, said Taylor met William B. and Alfred E. Ely, members of the firm of Ely & Co. in the street, and told them what Withey had said in regard to their indebtedness to him on said contract; to which said Alfred replied, that he did not know how the fact might be, that his brother the said William B. knew more in relation to the matter than he did, and referred said Taylor to him; and one of the said Elys remarking that they could not tell then, their books being at the store, they separated.

On the morning after said conversation, William B. Ely, seeing Bartholomew, one of said firm of Taylor & Co., informed him that they had concluded not to say any thing in relation to the state of their accounts with Withey; that if Taylor & Co., took the contract to finish, they must take it on Withey's representations entirely; that he knew his own business and could inform them, but that they might be blamed by Withey, and would say nothing about it. Alfred E. Ely also said to Bartholomew on the same day, that if they took said building to finish, they must take it at their own risk.

Ely & Co. at that time supposed themselves indebted to Withey, and had proposed to go forward and finish the building; which was known to Taylor & Co., before they commenced work thereon under said assignment; Ely & Co., supposing the cost of completing said work would not exceed eight hundred dollars, while Withey estimated it at nine hundred and forty dollars; and Taylor & Co. would not have proceeded to finish said work, if they had not supposed that a large balance would be due from Ely & Co. when said building was finished; and although from the time of said assignment in March, until said building was finished in August 1852, some one of said firm of Ely & Co. was frequently at said house, it did not appear that any other conversation took place between the parties in relation to their payments for said house, or that Taylor & Co. were ever informed that the north house was not finished according to the contract, or that the contract for the south house was not a distinct and independent contract.

The plaintiffs after said assignment proceeded in good faith to finish said building within a reasonable time thereafter, and were not aware until the accounts of Withey, their own, and Ely & Co's, were presented for adjustment, that Ely & Co. claimed that they were not indebted to Withey as stated by him when they undertook to complete said contract.

At the term of the court holden in October 1855, the report of the committee was accepted, and the bill dismissed.

The plaintiffs thereupon by motion in error brought the record before this court for revision.

*Hungerford* and *Cone,* in support of the motion.

1. When the defendants were enquired of by the plaintiffs as to the amount due, or to become due when the contract was fulfilled for the south house, it was the duty of the defendants to have informed the plaintiffs correctly, or so far as they were enabled to do, upon that subject. *Watson* v. *McLaren,* 19 Wend., 557. *Taylor* v. *Newland,* 21 Wend., 94. *Davis* v. *Thomas,* 5 Leigh., 1. *Mangles* v. *Dixon,* 18 Eng. L. & Eq. R., 82.

2. If they were then unadvised, it was their duty to inform themselves and communicate that information, and not leave the plaintiffs under a mistaken apprehension of facts, to expend their money in completing the building, and incur a loss for the benefit of the defendants.

*R. D. Hubbard,* contra.

1. If the question were between Withey and Ely & Co., nothing could be found due.

The plaintiffs are the assignees of Withey, and stand on no higher ground than he. They took the contract subject to all the off-sets, abatements and equities which would attach to it as between the original parties. But according to the finding of the committee, there is not only nothing due on the contract, but on the other hand Ely & Co. have paid more than the amount required.

2. The plaintiffs are entitled to nothing on the grounds of equitable obligation.

Withey was under obligation to finish the house : Taylor, by an arrangement between him and Withey, assumed Withey's obligation, and Ely & Co. were not a party to this arrangement.

Ely & Co. did not encourage Taylor & Co. to go forward, on the other hand they discouraged them. The assignment was taken with the view of completing the work, and this was done before Taylor had seen Ely & Co.

After the assignment was made, Ely & Co. were under no obligation to make a statement of the accounts to Taylor & Co. They were under no obligation to make a statement even to Withey.

3. Ely & Co. informed Taylor that they could not give him the information, because Withey might blame them, and if he " took the building to finish he must do so at his own risk." After being so advised in distinct terms, could Taylor & Co. go forward, but at the risk and cost of Ely & Co. ?

Ely & Co. moreover supposed Taylor & Co. to be secured and therefore could not equitably be held to render an account.

4. If the plaintiffs claim anything on the ground of equitable fraud and concealment, they should have set it up in the bill. Otherwise they can take nothing on that ground.

5. If the plaintiffs are entitled to any thing on this ground they can not take it under the lien; under the lien they take only Withey's rights. Withey has no claim on this ground, and could not possibly file and swear to a certificate on this ground; the certificate sets up an indebtedness to Withey, and the lien is claimed therefor.

HINMAN, J. The plaintiffs as assignees of Benjamin S. Withey, seek to foreclose a mechanics lien in his favor, for building for the defendants, and on their land in the city of Hartford, a double brick dwelling-house, the work on which was commenced by Withey, under a contract with the defendants, but was finished by the plaintiffs. Withey being unable to go on with the work, and being indebted to the plaintiffs for materials furnished, assigned the contract to them to finish, and to collect for their own use whatever might be due thereon.

The plaintiffs claim a balance of $1,500 to be due on the contract, but the bill states that the accounts between Withey and the defendants have not been adjusted, and it therefore seeks only to foreclose for whatever may be found to be due, with the interest thereon.

The defendants deny that there is any thing due, and by the report of the committee, it appears that, as between the defendants and Withey, there is nothing due; on the contrary, Withey has been overpaid. The plaintiffs however claim, that the conduct of the defendants, before and since the assignment, has been such as to induce the plaintiffs to believe, that the sum of fifteen hundred dollars would be due when the house was finished, on the faith of which, they, in good faith, went on and completed the contract; which they would not have done, had the defendants given them correct information, as to the state of the accounts between them and Withey. They therefore insist that the defendants are estopped to deny their liability, to the

extent which they were induced to believe would be due when the contract was finished. The defendants never made any direct admission, that there would be any thing due from them when the house was finished; but it is claimed that their conduct was such, as to induce the belief that a large balance would be due on this event; and that, in the expectation of being able to reimburse themselves for their expenditures, and also to obtain payment of a portion of their own debt against Withey, they have been drawn in to make advancements, wholly for the benefit of the defendants, and which the plaintiffs must lose, unless the defendants are liable to make good the representations upon which the advancements and expenditures were made. The question therefore is, whether there are facts enough found to estop the defendants, as between them and the plaintiffs, from denying their liability. Withey represented to the plaintiffs that fifteen hundred dollars would be due when the contract was completed, and this was immediately communicated to one of the defendants, who replied that he did not know how the fact might be, that his brother knew more of the matter than he did, and referred the plaintiffs to him; and one of the defendants remarked, that he could not then tell, their books being at the store; and subsequently the defendants refused to give such information on the subject as the plaintiffs required.

The plaintiffs' claim is founded upon the idea that the defendants' conduct, in suffering the plaintiffs to go on and expend their money in completing Withey's contract, under the false impression that when completed there would be enough due upon it to reimburse them for such expenditures, and would also be enough to pay them for a portion of Withey's indebtedness to them, in connexion with the declarations of the defendants, after they were informed that Withey had said that fifteen hundred dollars would be due when the house was finished, and their refusal to give information in respect to their accounts with Withey, is tantamount to silently standing by and suffering an honest purchaser to expend his money in the purchase of property to which the

party thus consenting to its sale has a claim of which he gives no notice; and as the defendants not only omitted to give any information on the subject when first applied to for the purpose, but subsequently expressly refused to give any, on the ground that they might be blamed by Withey, it is asked, whether the express refusal to give any information is not to have the same effect, that the silence of a party will have upon his rights to property, if he is standing by when it is sold to a bona fide purchaser; and whether it makes any difference in the case, that a reason was given for such refusal. No one doubts that by refusing or neglecting to give notice of his rights to property, where it has the effect to mislead a purchaser, by inducing him to believe that no such rights exist, a party may preclude himself from afterwards asserting them. And the case, as we think, turns upon the application of this and other well settled principles, rather than upon any difficult or doubtful principle itself. We do not assent however to the notion, that a refusal to speak, with a reason given for it, is the same thing as silent acquiescence in what another does or says. A party can not be misled unless something is done or omitted which has the effect to mislead him. When the silence of a party has the effect to mislead another to his injury, and is willfully suffered to have that effect, justice requires that the party should be concluded by it.

But to operate as an estoppel, the silence, which is only one mode of making a representation, must not only have misled the other party, but it must have been intended to mislead him, or at least, it must have been such culpable negligence or carelessness, as may be said to amount to an intention to mislead. Hence Parke B. in the case of *Freeman* v. *Cook*, 2 Exch. Rep., 654, in commenting upon the rule laid down by Lord Denman, in *Pickard* v. *Sears*, 6 Ad. & El., 469, which is the rule so frequently recognized by this court, since the case of *Brown* v. *Wheeler*, 17 Conn. R., 345, says, that the rule laid down in *Pickard* v. *Sears*, was to be considered as established; but the term " willfully " in that rule must be understood, if not that the party represents that to be truth

which he knows to be untrue, at least, that he means his representation to be acted upon, and that it is acted upon accordingly ; and if, whatever a man's real meaning may be, he so conducts himself that a reasonable man would take the representation to be true, and believe that it was meant that he should act upon it, and he did act upon it as true, the party making the representation would be equally precluded from contesting its truth." It is also said in the same case, that the doctrine of *Pickard* v. *Sears,* is not to be acted upon in most cases, unless the representation is such as to amount to the contract or license of the party making it. The doctrine in regard to estoppels in pais, is more liberal, and less entirely governed by technical rules, than estoppels by deed or by record. The object is to prevent fraud, not to produce it by entrapping a party. An estoppel of this sort is called an equitable estoppel, in contradistinction to the technical, legal estoppel, arising upon a deed or record ; and where the representation or concealment is not willfully fraudulent, or is not attended with such gross negligence of the rights of others as to be tantamount thereto, the party ought not to be estopped. *Parker* v. *Barker,* 2 Met., 423. Hence, where a representation is not acted upon, or is not intended to be acted upon, and the party making it had no reason to suppose it would be acted upon, it will not operate as an estoppel. *Freeman* v. *Cook,* 2 Exch., 654. *Cady* v. *Dyer,* 20 Conn. R., 563.

Now, whatever may be true in regard to some loose expressions found in some of the numerous cases on this subject, it is believed that the general current of the best considered modern cases is strongly in favor of the doctrine as it is here stated ; and it is certain that this court has never extended the principle beyond it. *Brown* v. *Wheeler,* 17 Conn. R., 345. *Roe* v. *Jerome,* 18 Conn. R., 138. *Abel* v. *Fitch,* 20 Conn. R., 90. *Whitaker* v. *Williams,* 20 Conn. R., 98. *Dyer* v. *Cady,* 20 Conn. R., 563.

And why should it go further? The object is to do justice, and to suppress fraud. But if a party is drawn in to make representations by mistake, or if he make them in ignorance of his rights, or if he is silent, and thus seems to acquiese in the

declarations or representations of others, when he has no knowledge of his rights, especially when he has no knowledge of facts on which his rights rest, there is no justice in his being concluded thereby; and, we think, there is no just equitable principle, that will prevent his setting up the truth.

To make the silence of a party operate as an estoppel, the circumstances must be such as to render it his duty to speak. He must be silent when conscience requires him to speak. *Niven* v. *Belknap*, 2 John., 573. *Clabaugh* v. *Byerly*, 7 Gill., 354.

We know of no principle that requires that the evidence of title should be disclosed; or that an account should be rendered, where as in this case, the interest of another may depend upon the state of the account, so long as nothing is done to mislead. It might be prejudicial to the right claimed, if the party was bound to go into details respecting it. The true question must be, whether any thing was intentionally, or at least by gross negligence, concealed, which had the effect to mislead.

Tested by these principles, we think the facts found by the committee are not sufficient to entitle the plaintiffs to relief. There is no actual fraud found against the defendants; and although certain facts and circumstances are found, which might have more or less weight as links in a chain of evidence going to show fraud, yet they are in themselves of an inconclusive character, and, in connection with other facts in the case, are wholly insufficient to induce us to believe that the defendants intended to mislead the plaintiffs. The circumstance on which the plaintiffs' counsel appear to place the most reliance, is the fact that the defendants stood by and saw the plaintiffs expend their money in the completion of the building, without informing them that there would be nothing due on the contract, when the house was finished. If this fact was unexplained it might perhaps fairly be inferred from it, that the defendants intended by means of the plaintiffs' materials and labor upon the building, to reimburse themselves for their overpayments to Withey; and if such was their object it would be a fraud which would subject

them in this application.  But the case finds that Withey informed the defendants that he had secured the plaintiffs for completing his agreement; and if this information was believed, and we can not say the defendants had any reason to disbelieve it, it entirely changes the character of the defendants' acts, by showing that they, as well as the plaintiffs, were misled, and were acting under a mistaken impression induced by the unreliable statements of Withey.  Besides, the defendants were not entirely silent in acquiescing in the plaintiffs' work upon the house; and we think under the circumstances, that it can hardly be said that the plaintiffs, in performing this work, acted with the prudence and caution which most men would have exercised.  They were probably more easily misled than they otherwise would have been, in the hope of obtaining payment of some portion of Withey's indebtedness to them; and so far as they acted under any such inducement, it is chargeable to their own imprudence, for which obviously the defendants are not responsible. The defendants distinctly told the plaintiffs, that if they went on with it, they must do so on the representations of Withey alone; and they gave as a reason for refusing to say any thing in respect to the accounts, that they might be blamed by Withey.  This is certainly an intimation that they ought not to rely on his statement.   It is much the same as saying, we do not admit his statement to be true, and if you act upon it, you must do it at your own risk.   It appears moreover, that there would have been a considerable sum due to Withey, had his work been such as to answer the terms of his contracts; and the defendants had no reason to suppose that it would not.  To the extent of the deduction for imperfect work and materials, they could not be made liable, had they expressly admitted their indebtedness, as it would obviously have been an admission founded upon the expectation that there would be no such neglect on the part of Withey to perform his contract.  Making then the proper allowance on account of this imperfect work, and the whole case against the defendants seems to be this: they were told that Withey had said there would be $1,500 due from them

when the house was finished, and they did not admit this, and supposing something would be due from them, they did not deny it ; but cautioned the plaintiffs, that if they went on with the work, they must do so at their own risk, on the representations of Withey alone, as they had concluded to say nothing on the subject. We think there is not enough here to subject them, and we therefore advise that the bill be dismissed.

In this opinion, STORRS, J. concurred.

WAITE, C. J. The principal question in this case is, whether the defendants, when called upon by the plaintiffs for information as to the correctness of the statement made to them by Withey, were in duty bound to answer the enquiry honestly and truly. I think they were. The plaintiffs had an interest in the enquiry. They had a debt of considerable amount against Withey, which they could secure, but at much expense, provided his statement to them was correct, that there would be fifteen hundred dollars due to him, from the defendants, when the house was finished.

There were but two parties who knew the state of the accounts, Withey and the defendants; the plaintiffs could obtain no information from any other persons. Having ascertained what they could from the former, they went to the latter, informed them of the statement which Withey had made, and their interest in the enquiry, and requested to know of them whether the statement was correct.

The defendants took time to examine their books, and then informed the plaintiffs that they had concluded not to say any thing in relation to the building—that if the plaintiffs intended to take the contract, they must take it upon Withey's representations entirely—that he could inform them, and as they might be blamed, they would say nothing about it; and at the same time proposed themselves to go forward and finish the building.

These answers seem to have been artfully framed, so as to deceive and mislead the plaintiffs, in the manner they were,

and induce a belief in their minds, that by completing the building they could secure their debt against Withey, and their expenditures in completing the contract.

If, as the defendants stated, Withey knew his own business *and could inform them,* the plaintiffs were reduced to the alternative of believing, either that his representations were substantially true, or wilfully and falsely made. There is nothing in the report of the committee, calculated in the least to awaken suspicion as to his honesty. He had no inducement to deceive them. Not so with the defendants. If they could induce the plaintiffs to go forward and complete the building, without any expense to themselves, and then reap the fruits of the plaintiffs' labors and expeditures, they would be the gainers thereby.

Besides, why did they offer to go forward themselves and complete the building, unless to induce the belief that there would be enough due from them, at least to cover the necessary expense. It is indeed found that they supposed they were indebted to Withey in a greater or less amount. But before they answered the plaintiffs' enquiry, they took time to examine their books, and then informed the plaintiffs that they had concluded to say nothing upon the subject, thus designedly concealing from the plaintiffs a knowledge of the facts, which they knew it was material for them to understand.

Had they given the plaintiffs such information as they possessed, they would have been exonerated from all imputation of fraud.

It is said the plaintiffs were at liberty to act or not, upon the information derived from Withey. But they did not stand exactly in the condition of volunteers, purchasing an unexecuted contract. Withey owed them to a considerable extent, for materials furnished in building the very house in question, under his contract with the defendants, and they had a right to use all lawful measures for the collection of that debt; and if there would be enough due to him from the defendants, to pay their debt, the plaintiffs had a right to avail themselves of that indebtedness.

It seems to me, that the defendants can stand in no better

situation than they would, had they stood by and seen Withey convey their land to the plaintiffs, knowing what he was doing, and neglecting to give the plaintiffs information of his want of title. In such case, the law says they would afterwards be estopped from saying that the grantor had no power to convey. They would have no right to remain silent and see the purchasers defrauded of their money.

Their silence in the present case, saying nothing of their declarations and conduct, was as much a fraud upon the plaintiffs, as it would be in the case supposed. It is found that one or other of the defendants was almost daily at the house, while the finishing was going on, and, in one instance, directions were given as to the work, and, during all this time, not the least intimation is given to the plaintiffs, that they are expending their time and money solely for the benefit of the defendants, and without any prospect of receiving any remuneration therefor.

If such conduct can receive the sanction of a court of justice, I am confident it can not receive the approbation of any honest man.

It is objected on the part of the defendants, that inasmuch as the plaintiffs have not alleged fraud in their bill, they are not entitled to avail themselves of it, in the present suit. But if the defendants are estopped by their conduct from saying there is nothing due upon the contract, then this objection falls to the ground.

For these reasons I am of opinion that the plaintiffs are entitled to a decree for the amount by them expended in completing the contract, but not for their debt against Withey.

Bill to be dismissed.