## McGirr v. Sell.

TRESPASS.—*Trover.*—*Sale, on Execution, by Officer, of Property of One, in Possession of Another, for the Debt of Latter.*—*Pleading.*—*Estoppel.*—In an action to recover damages for the alleged unlawful taking and conversion, by the defendant, of certain personal property of the plaintiff, the defendant answered, alleging that such property consisted of certain barrels of whiskey, which, when seized by the defendant, were in the possession, and at the place of business, of a certain licensed retailer of intoxicating liquor; that the plaintiff had procured such retailer to obtain a license in his own name, and had furnished him means to purchase a stock of liquors to retail, under a secret agreement that such stock should be the property of the plaintiff until sold by the retailer, whose only interest therein was to be in the profits realized on retail; that the whiskey in controversy had been purchased by such retailer, in the usual course of business, on credit, to replenish his stock, and was to be paid for out of the proceeds of the business; that such retailer had contracted a certain debt on the faith that such stock was his own, and, judgment on such debt having been recovered by the creditor, and execution issued thereon to the defendant, who was an officer, he had levied on and sold such whiskey, as the property of such retailer, to satisfy such execution; and that the plaintiff had never notified either the creditor or the defendant, prior to such levy and sale, that he claimed any interest in such stock.

*Held*, on demurrer, that the facts alleged constitute no estoppel, that the title to such property is, by such facts, in the plaintiff, and that the answer is insufficient.

From the Wayne Circuit Court.

*C. H. Burchenal*, *J. Yaryan* and *A. B. Young*, for appellant.

*J. N. Popp*, *S. A. Forkner* and *H. C. Fox*, for appellee.

HOWK, J.—In this action, the appellee, as plaintiff, sued the appellant, as defendant, in the court below, to recover damages for the alleged unlawful taking and conversion, by the appellant, of two barrels of whiskey, the property of the appellee, of the alleged value of three hundred dollars.

Appellee's complaint was in three paragraphs; and the issues joined thereon were tried by a jury in the court below, and a verdict was returned for the appellee, assessing

damages at one hundred and eighty-seven dollars and ten cents.

Appellant's written motion for a new trial was overruled, and judgment was rendered on the verdict by the court below, from which judgment this appeal is now here prosecuted.

In this court the appellant has assigned several alleged errors of the court below; but his counsel, in their argument of this cause, consider and rely upon only one of these alleged errors, as "sufficient to secure a reversal of the judgment below." The alleged error of the court below, thus relied upon by appellant's attorneys, is assigned on the record as follows:

"2. The court erred in sustaining the plaintiff's demurrer to the 2d paragraph of the defendant's amended answer to the 3d paragraph of the complaint."

In this 2d paragraph of the appellant's amended answer to the 3d paragraph of appellee's complaint, the appellant alleged, in substance, that, long prior to the alleged taking and conversion of said whiskey, to wit, on the — day of ———, 1872, the appellee made an arrangement with one Charles McCoy, by which he procured and caused said McCoy to commence and carry on, in the city of Richmond, in Wayne county, the business of retailing intoxicating liquors; that said McCoy, in pursuance of said arrangement, applied for a license in his own name, from the board of commissioners, to retail intoxicating liquors in a certain saloon in said city, known as the "Continental Saloon," and being refused by said board, he appealed therefrom to the Wayne Common Pleas Court, wherein he obtained such license; that said McCoy, on the hearing of said application before said court, swore and testified, with the knowledge and approbation of the appellee, that he, said McCoy, was the sole proprietor of said saloon, and no one else was interested in said business; that the appellee, in pursuance of said arrangement, furnished said McCoy with the means to

McGirr *v.* Sell.

purchase a stock of liquors to be kept and sold in said saloon, and to replenish and keep up the same, said saloon being known as the saloon of said McCoy alone, who was, by the appellee's advice and procurement, held out to the public as the proprietor thereof, the appellee not being personally engaged or employed in said business, and not allowing his name to be publicly known or used as having any interest therein, but there being a secret agreement and understanding between them, that said stock of liquors should be and remain the appellee's property, and the profits, or some part thereof, to enure to the benefit of said McCoy; that, while said arrangement was so in force, and said business was so carried on, said McCoy, in the course of said business, contracted debts to certain parties, naming them, for goods which went into said saloon and were used in said business, and the appellee knew of the contracting of said debts, and neither he nor said McCoy notified said parties that the appellee had any interest in said business, or in said stock of goods, and that said debts were contracted on the faith that said stock and business were owned by said McCoy, the ostensible proprietor of said saloon; that, said debts being unpaid, said parties afterward, and without notice that appellee was interested in said business, brought suits against said McCoy, and recovered judgments thereon against him, before a justice of the peace of said county, setting out the date and amount of each judgment; that the justice issued executions on said judgments, directed to the appellant, then an acting constable of said county, and within one hundred and eighty days after the issue of said executions, the appellant found, in the possession of said McCoy, the two barrels of whiskey in appellee's complaint described, which had been ordered by said McCoy in Cincinnati, and purchased by him on credit, for the purpose of replenishing the stock of said saloon, and being used in the course of said business, pursuant to said arrangement, and was to be paid for out of the proceeds.

of said business; that the appellant, without any notice or knowledge that the appellee was the owner of any interest in said whiskey, levied said executions upon said whiskey as the property of said McCoy, and afterward advertised and sold the same according to law, and applied the proceeds to the payment of said executions and costs, which said levy and taking and sale by him are the identical taking and conversion alleged in the third paragraph of appellee's complaint, and none other. Wherefore appellant prayed judgment.

To this 2d paragraph of appellant's answer, the appellee demurred on the ground of the alleged insufficiency of the facts therein to constitute a defence to the 3d paragraph of his complaint.

This demurrer was sustained by the court below, and to this decision the appellant excepted. This decision the appellant has assigned as error, and for this alleged error only, he now asks this court to reverse the judgment of the court below.

In discussing the sufficiency of this 2d paragraph of appellant's answer, as a defence to appellee's action, the learned attorneys of the appellant thus state their first position in regard to said paragraph:

"The facts thus set up were such as to work a complete estoppel against the plaintiff, and to preclude him from asserting ownership of the goods as against the defendant."

In our view of the paragraph in question, appellant's position is not well taken. We have examined and considered each and all of the averments of this paragraph with great care, and we have failed to find that the appellee is therein or thereby charged with any intended deceit, either in his conduct or declarations, or with any fraud, actual or constructive, whereby the appellant was induced to levy upon, take and convert the whiskey, described in the complaint, as the property of Charles McCoy. Indeed, this paragraph of the answer utterly fails

to connect the acts of the appellant, of which appellee complained, in any manner with the appellee. It is not alleged, that the appellee, by any act or declaration, induced the appellant to levy upon, take or sell the said two barrels of whiskey. It is not even averred, that the appellee had any knowledge or notice, or that he had the means of knowledge or notice, of any of the acts of the appellant, in levying upon, advertising or selling the appellee's whiskey. McCoy's creditors may have trusted to appearances, and the appellant may have relied upon the fact that he found the whiskey in McCoy's possession; but it is not alleged, that the appellee said or did any thing which tended to induce the action of the appellant in the premises, or which would, or ought to, preclude the appellee from asserting his ownership of the whiskey, as against the appellant. In fact, in this paragraph of the appellant's answer, there is no averment of any of the matters which are necessary to constitute an estoppel. As between the appellant and the appellee, it was not alleged, that the appellee either represented to, or concealed from, the appellant any material facts; nor was it alleged, that the appellant was induced to act in the premises by the appellee's representation or concealment of any material facts. Bigelow Estoppel, 480; *Fletcher* v. *Holmes*, 25 Ind. 458; *The Greensburgh, etc., Turnpike Company* v. *Sidener*, 40 Ind. 424; *Meister* v. *Birney*, 24 Mich. 435.

The second position assumed by appellant's counsel in argument is, that the facts set up in this paragraph of answer "show that McCoy had such an interest in the goods as made them the subject of levy upon the particular executions described, notwithstanding the qualified ownership of the plaintiff, as between himself and McCoy." This point the learned attorneys have merely stated, and have failed to elucidate it by argument. Under the averments of the answer, the whiskey was the property of the appellee; and, if it had been sold at a

profit by McCoy, "the profits, or some part thereof," would have belonged to McCoy. This right to the profits on the sale of the whiskey would not, in our opinion, make the whiskey the subject of levy upon any executions against McCoy.

Our conclusion is, that the court below did not err, in sustaining the appellee's demurrer to the second paragraph of the appellant's amended answer to the third paragraph of appellee's complaint.

The judgment of the court below is affirmed, at the costs of the appellant.

### ON PETITION FOR A REHEARING.

WORDEN, J.—The appellant, in this case, has filed an earnest petition for a rehearing in the cause, and an able brief in support thereof, and we proceed to reconsider the question involved.

The following paragraphs from the petition will sufficiently indicate the positions assumed by the counsel:

"What we claim," says the petition, "is, 1st, that, under the facts, the whiskey in controversy was subject to levy and sale under the executions described; and, 2d, that the appellee was clearly estopped, against the execution plaintiffs, from claiming that the property so levied on belonged to him, and, being so estopped, such estoppel operates equally in favor of the appellant, who was acting for, and on behalf of, such creditors, in the enforcement of their lawful rights under such judgments and executions. That the appellee was estopped, as against the execution plaintiff, we shall endeavor to show from the authorities. It is a well established doctrine, that, when the true owner of property has voluntarily conferred upon another the usual evidence or *indicia* of ownership of such property, or an apparent authority to deal with it, he is estopped from setting up his title, as against a party who has dealt in good faith with the party thus having the evidence or *indicia* of ownership."

The appellant's counsel cite, in support of their views, the following cases: *Mitchell* v. *Reed*, 9 Cal. 204; *Anderson* v. *Armstead*, 69 Ill. 452; *White* v. *Morgan*, 42 Iowa, 113; *Drew* v. *Kimball*, 43 N. II. 282; *Horn* v. *Cole*, 51 N. H. 287; *McNeil* v. *The Tenth Nat'l Bank*, 46 N. Y. 325; and *Barnard* v. *Campbell*, 55 N. Y. 456. It must be conceded, that some of these cases go far toward sustaining the views of counsel for the appellant.

It would be difficult to reconcile all the decisions on the subject of estoppel *in pais*, and we shall make no attempt to do it in this case. In some cases it is held, that an intent to deceive is a necessary element of the estoppel; while in others it would seem that such intent is not supposed to be necessary. In the case of *Piper* v. *Gilmore*, 49 Me. 149, an intent to deceive, or a design to influence the conduct of the opposite party, by a statement made by the party sought to estopped, was held to be necessary to the estoppel. This case seems to have met the approval of Judge REDFIELD. See note to the case, as reported in 3 Am. Law Reg. N. s. 584. This, however, is not the only particular in which the cases on the subject seem to be in some degree in conflict. We shall not examine many of the cases in detail, but proceed more directly to the question before us. We may first observe, however, that Judge REDFIELD, in the note above cited, said, that, " While the doctrine of estoppels of record has been advancing to greater stringency, that of estoppels *in pais* has been constantly relaxing of late. It was at one time supposed that if a party inquired of by a mere intruder, denied his interest in any subject-matter of the inquiry, he was forever estopped from setting up such interest, not only against the party inquiring, but as to all other parties to whom such denial had been communicated. But this broad rule is clearly not maintainable."

We think it may be conceded, that, if the first proposition of counsel is true, the second one follows. If the property in question was subject to levy and sale under

the executions described, the defendant, the officer having the executions in his hands for service, was doubtless justified in making the levy and sale. The question arises then, whether the plaintiffs in the executions had the right, on the facts alleged in the paragraph of answer, to levy upon and sell the property. The answer in question admits, because it does not deny, that the title to the property is in the plaintiff in the action, and it alleges matter which, it is claimed, estops him to set up that title.

It may be observed, that no fraud is imputed to the plaintiff, nor is any statement of his in reference. to the property relied upon to work the estoppel. His acts alone are relied upon. These acts consist, in brief, in placing liquor in the saloon, and allowing McCoy to retail it out in his own name, as if he were the proprietor, and sole proprietor, thereof. Until the liquor was retailed out, in the usual course of business, the title remained in the plaintiff. There is nothing in the pleading showing that any thing more than a retail business was done or contemplated.

Now, the plaintiffs in the executions were clearly in no better condition than if they had, in good faith and for value, bought the two barrels of whiskey of McCoy. If the estoppel, or supposed estoppel, would not protect them as purchasers from McCoy, it clearly would not protect them as creditors of the latter. The fact that McCoy retailed the liquor as his own gave the execution creditors no more right to give him credit on the faith that he was the owner, than it would to have purchased the two barrels on the like faith.

We are of opinion, that the acts of the plaintiff do not estop him to set up his title to the whiskey as against the execution plaintiffs, and that to hold otherwise would overturn several decisions of this court, as well as some well considered cases elsewhere. To be sure, the plaintiff vested McCoy with the possession of the property, and authorized him to retail it out as his own.

McGirr *v.* Sell.

It was said, in the case of *Barnard* v. *Campbell, supra :* " It is not every parting with the possession of chattels or the documentary evidence of title that will enable the possessor to make a good title to one who may purchase from him. . So far as such a parting with the possession is necessary in the business of life, or authorized by the custom of trade, the owner of the goods will not be affected by a sale by the one having the custody and manual possession. * * * But the owner must go farther, and do some act of a nature to mislead third persons as to the true position of the title."

If the plaintiff had authorized McCoy to sell the whiskey at wholesale, that would have ended the question; the title would have passed by a sale made by him, and there would be no need of the aid of the doctrine of estoppel.

But his authority to McCoy to retail in his own name did not necessarily carry the inference that the title to the liquors was in the latter. This was the purpose for which the liquors were placed in his possession, and was consistent with the plaintiff's ownership of the property.

In *Thomas* v. *Winters*, 12 Ind. 322, two steers were sold, with the stipulation that the title was not to pass until they were paid for. The purchaser took possession of the steers, used them a while, and sold them. The steers not being paid for, it was held that the original seller might recover them from the vendee of his vendee, the title never having passed. But the original seller put his vendee in possession of the steers, and permitted him to use them as his own. The possession of the steers and the use of them were as much evidence of title as the retailing of the whiskey; yet it was not held that the original vendor was estopped to set up his title. Similar to the case last cited is the case of *Dunbar* v. *Rawles*, 28 Ind. 225 In the case of *Bradshaw* v. *Warner*, 54 Ind. 58, the plaintiffs had sold a safe to Wolf & Co., but the title was

not to pass until it was paid for; and the plaintiffs had put Wolf & Co. in possession of the safe, and they used it at their place of business.   Afterward Bradshaw bought the safe at a constable's sale, on an execution against Wolf & Co., without any notice of the plaintiffs' claim. The safe not being paid for, it was held that the plaintiffs could recover it from Bradshaw.   Here, again, the plaintiffs had put their vendees in possession of the property, and suffered them to use it at their place of business as their own; but it was not held, that the plaintiffs were estopped to set up their title.   It seems to us, that the possession of the safe, and the use of it by the purchasers at their place of business, were as much evidence of title as the retailing of the whiskey.

The case of *Herring* v. *Hoppock*, 15 N. Y. 409, was the case of a conditional sale of a safe, very much like the case last cited.   The plaintiff had conditionally sold the safe, or bargained it, to Brooks & Hopkins, but the title was not to pass until it was paid for.   The sheriff levied upon and sold the safe as the property of Brooks & Hopkins, and he was held liable to the plaintiff therefor.   See, also, the case of *Ballard* v. *Burgett*, 40 N. Y. 314.

In the case of *Hirschorn* v. *Canney*, 98 Mass. 149, the substance of which is stated in *Bradshaw* v. *Warner*, *supra*, it seems to us there was as much ground for an estoppel as in the case before us.

We will notice one more case, and then close this opinion.   In *Hart* v. *Carpenter*, 24 Conn. 427, the plaintiff was the owner of a cow, the value of which he sought to recover in the action; and, by an instrument in writing, he agreed with one Bebee that the latter should take her into his possession, keep and fodder her, paying himself therefor by the milk she should yield; and, if at any time within four months, or at the expiration of that time, he should pay for her thirty-five dollars, she was to belong to him; otherwise he was to return her, in good condition, to the plaintiff.   Bebee took the cow under this

agreement, but neither paid for nor returned her; on the contrary, he sold her to the defendants, who bought her in good faith, supposing that she belonged to him. It was held, in trover, that the plaintiff was entitled to recover from the defendant for the cow. The plaintiff suffered Bebee, his conditional vendee, to keep and feed and milk the cow, thus exercising all acts of ownership over, and deriving a benefit from, the cow, yet he was not held to be estopped to set up his title against a *bona fide* purchaser from Bebee.

The petition for a rehearing is overruled.

Original opinion filed at May Term, 1877.
Opinion on petition for a rehearing filed at November Term, 1877.