Kiefer *et al. v.* Klinsick.

Filed October 9, 1895.

No. 1,127.

## KIEFER ET AL. *v.* KLINSICK.

ESTOPPEL.—*Married Woman.—Business in Name of Husband.—Mortgage by Husband.—Rights of Creditors.*—Where a wife furnishes money to her husband for the purpose of purchasing a retail drug store, clothes him with all the usual *indicia* of title, and permits him to carry on the business in his own name and to hold himself out to the world as the absolute owner, she is estopped to deny such ownership and his right to mortgage the stock, as against creditors who, in the regular course of business, and in reliance upon his apparent ownership, sold goods to him on credit and afterwards took a mortgage thereon to secure the debt. Case ordered transferred to supreme court with recommendation that *McGirr* v. *Sell*, 60 Ind. 249, be overruled.

LOTZ, C. J., files dissenting opinion.

SAME.—*Evidence.—Husband's Declaration of Ownership.—Giving Credit Upon.*—Declarations made by the husband in such case, to one from whom he purchases goods, that he is the owner of the business, are admissible to prove, in an action by the wife against such creditor, that credit was given to the husband on the faith of his ownership.

From the Cass Circuit Court.

*J. C. Nelson, Q. A. Myers, N. Morris, L. Newberger* and *J. B. Curtis,* for appellants.

*M. D. Fansler, M. Mahoney, Winfield & Taber,* for appellee.

GAVIN, J.—The facts which there is at least evidence tending to prove are set out quite fully in the opinion

prepared by Lotz, C. J. Upon these facts the appellee was, upon the plainest principles of honesty and fair dealing, estopped to assert title to the goods as against the appellants. She permitted her husband to be clothed, not with the possession merely, but with all the usual *indicia* of title, and to hold himself out to the world as the absolute owner of the stock. That the world would deal with him as such was the natural—nay, more, the inevitable result.

Relying upon the husband's appearance of ownership, appellant's debts were contracted and their mortgage rights accrued.

The authorities, both within and without our State, forbid that appellee should be heard in court to deny the rights thus acquired by appellant.

The principle at the basis of all estoppels *in pais* is, that whenever one of two innocent persons must suffer by the act of a third, he who has enabled such third person to occasion the loss must sustain it. *Lickbarrow* v. *Mason*, 2 T. R. 70 ; *Preston* v. *Witherspoon*, 109 Ind. 457.

As expressed by the supreme court of the United States, the vital principle is that he who by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden." *Dickerson* v. *Colgrove*, 100 U. S. 578, approved in *Quick* v. *Milligan*, 108 Ind. 419.

Neither is it essential in order to the existence of an equitable estoppel that there should be at the time a design to deceive or defraud. "The person against whom the estoppel is asserted must by his silence or his representations, have created a belief of the existence of a state of facts, which it would be unconscionable to

deny." *Anderson* v. *Hubble*, 93 Ind. 570; *Quick* v. *Milligan, supra*; *Maxon* v. *Lane*, 124 Ind. 592; 2 Herman on Estop., section 953.

In *Moore* v. *Moore*, 112 Ind. 149, where one by fraud procured the assignment by indorsement of a promissory note not payable in bank, the real owner was held estopped to claim the note as against subsequent assignee for value without knowledge of the fraud. The court in its opinion says : "The more modern rule upon the subject under consideration seems to be, that where the owner of things in action, although not technically negotiable, has clothed another, to whom they are delivered, in the method common to all mercantile communities, with the usual apparent *indicia* of title, he will be estopped from setting up against a second assignee, to whom the securities have been transferred for value and without notice, that the title of the first assignee was not perfect and absolute."

In *Hirsch* v. *Norton, Admr.*, 115 Ind. 341, Hirsch had transferred to Study certain shares of bank stock in regular form, but with a written agreement that the stock actually remained the property of Hirsch. The court held that as against those with whom Study dealt and who gave him credit on the faith that he owned the stock, he was in equity to be deemed the owner. Elliott, J., in the course of the decision says: "The transfer made by the appellant gave to Study all the evidence of title that it was possible for the one to create or the other to acquire, and as to those who in good faith gave Study credit on the faith of his legal ownership, the appellant cannot be allowed to make available the secret agreement between him and his assignee. He voluntarily put it in the power of Study to secure credit upon the faith of his ownership of the stock, and as against creditors he cannot be heard to aver that the secret

agreement secured to him the ownership of the capital stock. Where a party, by clothing another with all the legal *indicia* of ownership, enables him to mislead others, he, and not those who are misled by his acts, must be the sufferer. If loss comes, the man who invested the debtor with the evidence of absolute title, and thus misled creditors, must bear it, and not the creditors. The conclusion we assert involves little more than the application of the familiar general principle, that where one of two innocent persons must suffer by the act of a third, he must suffer who put it in the power of the third, to do the act."

The case of *Minnich* v. *Shaffer*, 135 Ind. 634, decides that if A allows lands paid for by her to be deeded to B, and third persons extend credit to B upon the faith of his ownership of the land, A will be estopped to assert title against such creditors.

These cases establish the proposition that it is unnecessary to the existence of an estoppel, that the party estopped should have acted with reference to the particular creditor injured.

Effort is made to distinguish the last three cases from the one in hand because of the fact that in them the legal title was actually vested in the apparent owner.

As we regard the law it is immaterial whether the legal title is vested or only the apparent legal title.

So far as concerns all the reasoning and principle on which these decisions are based, they apply to an apparent title and right of disposition as well as to a legal title. The equities, and it is with these we are dealing, are as strong in the one case as in the other.

The law applicable here is correctly laid down in *Preston* v. *Witherspoon*, *supra*, by Zollars, J. There, certain farmers deposited their wheat with an elevator company to be returned in kind. They knew the custom

Kiefer *et al. v.* Klinsick.

of the company was to mix the wheat and ship and sell from a common bin. The company sold part of the mass of wheat to Witherspoon *et al.* from whom the depositors sought to reclaim it. The court determined the rights of the parties upon the theory that the company was a bailee of the wheat, and says: "We think, as concluded by the court below, that by the voluntary acts of appellants (the depositors), Runcie and Wallace, the persons composing the elevator company, were clothed with the apparent title and right to sell, and that as Witherspoon, Barr & Co. were innocent purchasers in the usual course of business, they should be protected.

"As a general proposition, it is well settled, both in law and reason, that no one can convey a better title to property than he has. In other words, no one without title to property can convey title thereto, and thus defeat the claims of the rightful owner. But there are many cases where the owner of property will be estopped to assert his title thereto as against an innocent purchaser for value. We think this is such a case. As we have seen, appellants knew that their wheat was to be, and was commingled with wheat purchased by the elevator company, and that company was selling and publicly shipping from the common mass. They, therefore, knew that others were purchasing the wheat from the elevator company, in the usual course of business, and paying their money therefor. By thus putting their wheat into the possession of the elevator company, and allowing it to sell and ship from the common mass, *they clothed that company with an apparent ownership* of, and authority to sell, the wheat, which estops them to assert their title thereto, as against W., B. & Co., who invested their money in good faith, believing that to be a

fact which appellants by their conduct permitted to appear to be a fact.

"As between appellants and the elevator company, the question is, what authority did the elevator company in fact have to sell and dispose of their wheat? As between appellants and W., B. & Co., the question is, with what apparent authority did appellants clothe the elevator company to sell and dispose of their wheat?"

This case we regard as conclusive as to the merits of the cause in hand.

The position which we take is in exact harmony with the views of the most eminent text writers upon this subject.

In Bigelow on Estop., the law is thus declared : "In accordance with this case it is now a well established principle that where the true owner of property, for however short a time, holds out another, or allows another to appear, as the owner of or as having the full power of disposition over, the property the same being in the latter's actual possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected."

In Herman on Estop., section 978, we find the following : "Where the owner holds out another, or allows him to appear as the owner of, or as having full power of disposition over, the property, and innocent third parties are led into dealing with such apparent owner, they will be protected."

In *Anderson* v. *Armstead*, 69 Ill. 452, Justice Schofield, speaking for the court, says : "The law is familiar, that where the owner of property holds out another, ᴄ allows him to appear, as the owner, or as having full power of disposition over the property, * they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom

they have directly dealt, but they are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power he caused or allowed to appear to be vested in the party, upon the faith of whose title or power they dealt."

Again, in the same case, it is said: "It is immaterial as we have already shown, whether she in fact authorized the particular contract to be made or not. The question is not what power did her husband actually have over the property, but what power did she, by her acts and omissions, permit him to represent himself to the appellant to have."

The application of the principles declared by these authorities appears to me to make it clear that in this case, if the appellee permitted her husband to run this business in his own name, buy the goods in his own name, return them for taxation as his, appear to the world as in all things the absolute owner of them with the power of disposition which belongs to such an owner, and contract debts in the course of his business as such owner, she is estopped to deny such ownership as against appellants, who in the regular course of business, relying on such apparent ownership, sold him goods on credit and then took a mortgage thereon to secure the debt, granting an extension of time in consideration thereof. Whatever there may be in the case of *McGirr* v. *Sell*, 60 Ind. 249, asserting an opposite doctrine, is in our judgment contrary to the principles of the law and to the later authorities, both within and without our State.

The instructions of the trial court were not in harmony with the views of the law which we have expressed. If they are right the judgment should be reversed.

Under the decision in *Hirsch* v. *Norton, Admr., supra,*

the declarations of appellee's husband made to appellants. concerning his ownership of the property were admissible to prove that credit was given him on the faith of his ownership of the goods.

In view of the fact that the supreme court has in *Hirsch* v. *Norton, Admr., supra,* distinguished the case of *McGirr* v. *Sell,* and has never in terms overruled it, this case is ordered transferred to the supreme court with the recommendation that that case be overruled.

REINHARD and DAVIS, J. J., concur in this opinion.

ROSS, J., does not participate.

Filed June 22, 1894.

### DISSENTING OPINION.

LOTZ, J.—The facts of this case as disclosed by the evidence are briefly as follows :

In August, 1885, the appellee, Jennie Klinsick, was a married woman, the wife of one William Klinsick. She was sole owner of about $1,300 in money which she had realized from property inherited by her. Her husband was a druggist by profession, and was desirous of engaging in that business. A stock of drugs and fixtures situate in a certain building in the city of Logansport, were for sale. Mrs. Klinsick gave her husband the said $1,300 for the purpose of purchasing said stock and fixtures, and with which he did purchase the same. He immediately took possession thereof and made arrangements to continue the business at the same place. He put a sign on the window in large letters in these words, "Klinsick's Drug Store." He had letter heads and prescription blanks printed and relabeled the goods in his own name. He conducted said business in his own name from the time of the purchase until shortly before this action was commenced in January, 1892.

He sold from said stock and from time to time as the business required he purchased goods to replenish the same. All goods bought for the purpose of replenishing said stock were bought, billed and shipped in his name. All accounts pertaining to said business, including the bank account, were made out and kept in his own name. The stock of goods was listed for taxation in his name. His family, including the appellee, lived from the proceeds of said business during all of said time. Mrs. Klinsick was frequently around and in said store. The appellants, Augustus Kiefer and William H. Schmidt, were wholesale druggists of Indianapolis, doing business in the name of "A. Kiefer & Co.," and they employed traveling salesmen in the prosecution of their business. In a short time after William Klinsick took possession of said store, one of the traveling salesmen of A. Kiefer & Co., called upon him for the purpose of making sale of their goods. The salesman made inquiry of William for the purpose of learning the style of the firm and said William gave the name of "William Klinsick." The said A. Kiefer & Co., relying upon such information, sold goods to the said William, and their said salesman called upon him every two weeks for a period of about six years and sold to him in said time large quantities of goods in his own name. In the month of November, 1891, the said William was indebted to A. Kiefer & Co., on account of such sales in the sum of $640, a part of which indebtedness was evidenced by accepted drafts and part by notes and open account. On the 12th day of November, 1891, A. Kiefer & Co., sent their attorney to see the said William Klinsick with instructions to obtain payment or security for their claim. The said attorney saw the said William, and on failure to secure payment he offered to divide the claim into a number of notes and give long time, on condition that the said

William would give personal security or a mortgage on the stock. The offer was not accepted at that time. On the 29th of December, 1891, William Klinsick executed to said A. Kiefer & Co., a chattel mortgage on the stock of drugs and fixtures to secure such indebtedness to them and, in consideration thereof, the time of payment was extended, the longest extension being for a period of eight months, and at the same time William Klinsick made an affidavit that he was the absolute owner of the stock of goods. The mortgage provided that if there were other liens or in case of levy of execution, the whole debt should become due. In point of fact there were then executions in the hands of a constable of which A. Kiefer & Co. had no knowledge. These executions were issued on judgments taken against Mrs. Klinsick. As soon as the constable learned of the existence of said mortgage, he levied the execution on the stock of goods and took possession thereof. The appellants, Nelson & Myers, at the request, and as the attorneys of A. Kiefer & Co., elected to treat the debt as due under the mortgage, and took possession of the goods subject to the execution levies; and afterwards A. Kiefer & Co. sold the same to third parties. The executions were paid in full before the commencement of this action.

During the time William Klinsick was engaged in said business, his wife, the appellee, gave him $600 or $700 in addition to the original purchase-price, to be used in said business, and which was used in the same. No note or other evidence of indebtedness was ever taken by Mrs. Klinsick on account of such moneys. Nor was there ever any settlement or statement of account between them. The appellants, A. Kiefer & Co., had no knowledge that Mrs. Klinsick had any interest in or made any claim to said store or goods until shortly before this

action was instituted; and they made all sales of goods to William Klinsick upon the belief that he was the owner and upon the credit given him by reason of being the ostensible owner thereof. There was no evidence which tended to show that anything more than a retail drug business was ever done or contemplated by William Klinsick, or by his wife, the appellee, prior to the execution of the mortgage. Nor was there any evidence which tended to show that there was a secret agreement or trust between Mrs. Klinsick and her husband in relation to said goods. Nor was there any evidence which tended to show that Mrs. Klinsick had any knowledge of the execution of the mortgage by her husband at the time the same was done, or that she had ever authorized him to execute the same. Mrs. Klinsick testified that she was the owner of the goods at the time the mortgage was given and asserted such ownership by reason of the original purchase having been made with the said $1,300, and on account of her other money used in said business. There was evidence which tended to show that Mrs. Klinsick had full knowledge of the fact that said business was conducted in the name of her husband, and there was evidence which tended to show that on one occasion after the debt to A. Kiefer & Co., had been incurred, said occasion being on the day before the mortgage was executed, she stated to said appellants' attorney that the debt was her husband's business and that the store was her husband's store. It is proper to say that she denied that she had knowledge that the business was conducted in her husband's name and that she also denied of having made the statement to said attorney that the debt and the store were her husband's. For the purpose of this opinion we will treat both of these facts as proved by the evidence, that is, that she

did have such knowledge and did make such statement to appellants' attorney.

She brought this action to recover the value of the goods alleged to have been converted. The appellants answered the general denial and two special paragraphs in estoppel. The issues joined were tried by a jury which returned a verdict for appellee in the sum of $690, on which final judgment was rendered.

The only assignment of error discussed by appellants' counsel is that of overruling the motion for a new trial. In their motion for a new trial the appellants charged that the trial court erred in excluding certain evidence offered by them, and in improperly instructing the jury and in refusing to instruct the jury as requested by them.

On the trial the appellants were permitted to give in evidence the declaration of William Klinsick concerning said business and the manner in which he conducted the same. On one occasion, William Klinsick was at the business house of A. Kiefer & Co., in Indianapolis. He was not there for the purpose of buying goods but simply made a social call. Appellants then propounded to their witness, one of the appellants then testifying, this question: "State what, if anything, he ever said to you at any time before the commencement of this suit, during the time he was running the drug store here in Logansport about the ownership of the drug store?" The court sustained an objection to the question. Conceding that the declarations of William Klinsick while in the actual possession of the goods or while in the transaction of business pertaining to said store were competent, this question is too general, as it is not limited to the time when in possession or while in the transaction of business pertaining to the store. In view of the fact that the appellants were permitted to give in evidence the declarations and conduct of William Klinsick, and the manner in

Kiefer *et al. v.* Klinsick.

which he conducted said business *ad libitum,* while in
the actual possession, there was no error in this ruling.
The ownership of the goods at the time the mortgage
was executed, was one of the important questions in the
case.   It was a question of fact to be determined by the
jury under proper instructions by the court.   One of the
methods of acquiring the title to personal property is by
gift.   The appellants contend that the court erred in
refusing to give certain instructions as requested by
them and in modifying other instructions relating to the
subject of a gift of the money and of the property.   After
a careful examination of all the instructions given by the
court bearing upon the gift of the property and money
we are satisfied that this matter was fairly presented to
the jury, and it is unnecessary to set out in this opinion
the instructions given, refused and modified relating to
a gift.

The court also of its own motion gave several instruc-
tions to the jury bearing upon other questions to which
the appellants excepted.   The appellants presented to
and requested the court to instruct the jury on the sub-
jects of agency and estoppel *in pais.*   The court refused
these requests.   These instructions are very lengthy and
we will not encumber this opinion by setting them out.

If upon the above facts, the law is with the appellee,
then the ultimate judgment is right and no intervening
error, if any there be, will avail the appellants in secur-
ing a reversal.

In this branch of the case, the appellants contend
first, that the facts disclose that William Klinsick was
the agent of the appellee, with full authority to mort-
gage the stock in his own name for her; second, that the
facts establish an equitable estoppel against her.

The usual method of transacting business by an agent
is to use the name of the principal, but if the agent

transacts the business in his own name, but actually for an undisclosed principal, the person with whom the contract is made may, when he discovers the principal, elect to hold the principal for the contract; although he may have dealt with the agent, believing him to have been the principal and given him credit. *Thomson* v. *Davenport*, 9 B. & C. 78; Mechem on Agency, section 697; Story on Agency, sections 446, 449; *Thomas* v. *Atkinson*, 38 Ind. 248.

Conceding, without deciding that the facts of this case show that William Klinsick was the general agent of Mrs. Klinsick, in the management of the business and had the power of buying goods upon credit, and to retail them and to apply the proceeds to the payment of the debts contracted, it does not follow that he had authority to execute the mortgage. An agent, to sell either real or personal property has no power to mortgage. *Jeffrey* v. *Hursh*, 49 Mich. 31; *Wood* v. *Goodridge*, 6 Cush. 117; Mechem on Agency, sections 323, 361.

In *Switzer* v. *Wilvers*, 24 Kas. 384, 36 Am. Rep. 259, the plaintiff left a colt with the defendant with authority to sell the animal. The defendant, without authority, executed a chattel mortgage in his own name to another party. It was held that the mortgage was void and that a power to sell does not authorize a mortgage. If the owner of the personal property place another in possession with full power to sell for cash or on credit, at wholesale or at retail, a sale made by such person will confer a valid title, whether the sale be made in the agent's name or in the name of the principal. Or if the owner of personal property sell it upon credit and deliver the same to his vendee for the apparent or implied purpose of re-sale by such vendee, a condition in the contract that the title shall remain in the vendor until the purchase-price is paid, is void as against a purchaser from his

vendee. *Winchester Wagon Works, etc.,* v. *Carman,* 109 Ind. 31. But if the sale be not for the purpose of consumption or re-sale, and be upon the condition that the title to such property shall remain in the vendor until the purchase-price is paid, the vendee cannot, prior to the payment of the purchase-price, sell or incumber the property in such a manner as to defeat the title of the original vendor. *Thomas* v. *Winters,* 12 Ind. 322 ; *Bradshaw* v. *Warner,* 54 Ind. 58 ; *Baals* v. *Stewart,* 109 Ind. 371.

A chattel mortgage is a conditional sale, and upon the breach of condition, the sale becomes absolute. If appellants' mortgage be upheld it results in a sale at wholesale. The facts of this case, however, show that only a retail business was contemplated by the appellee. A power to sell at retail does not authorize a sale at wholesale.

The last contention that the appellee is estopped by her acts, declarations and conduct to assert a claim to the goods adverse to that of appellants is the most important question in the case. The estoppel sought to be invoked against the appellee assumes or proceeds upon the theory that she was originally the owner of the goods, but that owing to her conduct she has lost her title thereto.

The vital principle of an equitable estoppel is that of fraud. He, who by his language or conduct, leads another to do what he would not otherwise have done, will not be permitted to subject such person to loss or injury, by disappointing the expectations upon which he acted. A change of position by the first party would involve both fraud and falsehood, and the law abhors both. The principles of estoppel *in pais* have been applied to a great variety of cases. The doctrine has no application where everything is equally known to both parties, or where the party sought to be estopped was ignorant of

the facts out of which his rights sprung or where the other party was not influenced by the acts asserted in estoppel.    But if one stand by and see another purchase property without disclosing his interest to the person about to purchase, he cannot afterwards set up a claim of which the purchaser had no notice.    Nor is it necessary that the person sought to be estopped be present at the time the sale is consummated.    If he have knowledge of the contemplated sale and of the fact that the purchaser is ignorant of his rights, it is his duty to disclose his interest to such purchaser.    Nor is it necessary that there should exist a design to deceive or defraud on the part of the person sought to be estopped.    It is enough if when he asserts his claim, it would be inequitable and unjust to allow it to prevail against the purchaser.    The falsehood and moral wrong which the law denominates fraud, appears when the claim is asserted.    And this is true whether a party knowingly remains silent or so negligently conducts himself with reference to his rights as to mislead another. *Duckwall* v. *Kisner*, 136 Ind. 99; *Anderson* v. *Hubble*, 93 Ind. 570; *Fletcher* v. *Holmes*, 25 Ind. 458; *Gatling* v. *Rodman*, 6 Ind. 289.

The appellants claim title to the property through the mortgage.    The facts of this case, however, show that the appellee had no knowledge of the execution of the mortgage and that she never authorized it.    If she had no knowledge, the execution of the mortgage could not of itself work an estoppel against her.    It is true that title may be created by an estoppel *in pais*. *Pitcher* v. *Dove*, 99 Ind. 175.    But the person who invokes this principle must invoke it for himself and not in the interest of a third party.

The appellants contend that the appellee estopped herself by her conduct in permitting her husband to take and remain in possession of said goods for more than six

years, buying and selling and conducting said business in his own name ; that the fact that he was in possession and conducting said business in his own name and exercising the powers of ostensible ownership, induced the appellants, A. Kiefer & Co., to believe that he was the owner thereof, and that they gave him credit and sold goods to him upon the faith and credit of being the owner thereof.

It will be observed that this contention is not based upon the conduct of the appellee at the time of the execution of the mortgage, but upon her declarations and conduct prior to that time. The rights of A. Kiefer & Co. in the property in controversy, if any they had, prior to the execution of the mortgage, were only such rights as they acquired by reason of being creditors of either the appellee or of William Klinsick. The right that a general creditor has in the property of his debtor is extremely vague and uncertain ; but as the right may ripen into something tangible, and as it is the duty of a debtor to apply his property in discharge of his debts, the law will protect the creditor against the fraudulent operations of the debtor and will aid the creditor in subjecting the debtor's property to the payment of his debts.

If one person permit another to use his property, exercising all the powers of ownership over it for the purpose of giving such other person credit and financial standing, and such other person contract obligations upon the faith created by reason of such ostensible ownership, the real owner will be estopped to deny the right of such creditors to subject such property to the payment of their claims.

Again, if one knowingly or negligently permit another to use his property, exercising all of the powers of disposition over it, and knows or might have known by reasonable diligence, that third parties were dealing

with such person, creating obligations upon the faith and credit given such person by reason of such ostensible ownership, the real owner will be estopped to deny the right of such creditors to subject the property to the payment of their claims.

If A allows lands paid for by him to be taken in the name of B, and third persons deal with and give B credit, without knowledge of the rights of A, A will be estopped to assert an interest in the lands as against such creditors.   *Minnich* v. *Shaffer,* 135 Ind. 634; *Michener* v. *Bengel,* 135 Ind. 138; *Adams* v. *Curtis,* 137 Ind. 175

A deed of conveyance is the highest evidence of title to real estate and when coupled with possession, the grantee has all the *indicia* of title.   The statute, section 3335, R. S. 1894, requires all conveyances of land to be by deed in writing subscribed, sealed and duly acknowledged. When the debtor exhibits his deed, or the creditor learns of it through the record, the creditor has the right to rely upon it for all it purports to be.   The same rule holds good in reference to the transfer of certain kinds of personal property, such as shares of stock in corporations; such transfer being regulated by statute.

In *Hirsch* v. *Norton, Admr.,* 115 Ind. 341, it appeared that Hirsch assigned and transferred ten shares of bank stock to one Study, and caused a formal transfer to be made upon the books of the corporation; the bank issued a certificate for the ten shares to Study.   At the time of the transfer, Hirsch and Study entered into a secret agreement to the effect that Hirsch should remain the owner of the stock.   The court held that the creditors of Study whose claims were contracted upon the faith of such ownership, would be protected against such secret agreement.   That decision rests upon the fact that the shares of stock were a peculiar kind of personal property and

assignable by a peculiar method, prescribed by statute.
The court said : "The cases which govern transfers of
tangible personal property cannot control where the
subject of the transfer is the capital stock of a corpora-
tion." In that case Study was clothed with all the legal
*indicia* of title. "In appearance he was the sole and
legal owner of the stock. The books of the bank showed
this ownership and he was the holder of the certificate
which was the highest and best evidence of ownership.
Nothing was lacking in his evidence of title."

In *Moore* v. *Moore*, 112 Ind. 149, it was held that
where the holder of a promissory note is induced by fraud
and without consideration to endorse and deliver to
another who afterwards endorsed it to an innocent pur-
chaser, the original holder was estopped to deny the title
of the fraudulent endorsee as against the last purchaser.
That decision rests primarily upon the fact that the
statute, section 7515, R. S. 1894, provides that all promis-
sory notes "shall be negotiable by endorsement thereon
so as to vest the property thereof in each endorsee suc-
cessively." The first endorser clothed her endorsee with
every *indicia* of title and put it in his power to transfer
the note with all the evidence of ownership being in him.
To permit the first endorser to question the title in the
hands of the last holder would be a palpable fraud such
as the law will not tolerate. 2 Herman Estop., section
978.

The case before us is distinguishable from the above
cases cited and relied upon by the appellants. In those
cases the effort was to obtain the judgment of the court
affecting the status of particular property. And in those
cases also the debtor' or the vendor was clothed with
all the evidences of title. Here William Klinsick had
possession of the goods which was only *prima facie*
evidence of title in him. Such personal property as is here

in controversy, is usually transferred by mere delivery unaccompanied by any other evidence of title. In the complexity of modern commercial transactions, it is no unusual thing for the person who has the possession of goods and chattels and empowered to sell the same to be but a mere agent or servant. Possession of such property unaccompanied by any other evidence raises but a bare presumption of title. The largest commercial transactions are frequently consummated through the medium of agents, factors and brokers, and in which the real owners' names do not appear. The law will not permit a debtor to transfer and secrete his property fraudulently from his creditors, but will uncover it and subject it to the payment of his debts. But this is not an action to set aside a fraudulent conveyance, or to subject particular property to the payment of debts. Either the appellee or her husband was the owner of the stock of goods before the mortgage was executed. If the husband was the owner, that is an end of the controversy. The jury found that he was not. If the appellee was the owner, and her husband was in possession as her agent, with power to conduct the business and contract debts, but without power to mortgage or sell at wholesale, then the rights of the appellant were only such as a general creditor has in the property of his debtor. The mere fact that a creditor may have an equitable interest in the property of his debtor does not give the creditor the right to convert it to his own use. The debtor has rights also and other creditors may have rights.

The appellants also assert that there is an element of estoppel in the declaration of the appellee when she stated to their attorney that the debt and the store belonged to her husband. They claim that they were induced to extend the time of payment and to take a mortgage on the faith of this declaration. But the

undisputed evidence further shows that their claim had already been contracted when this statement was made and it also appears that their attorney when he called upon William Klinsick, in November, offered to extend the time of payment and give the said William all the time he wished on condition that he execute a mortgage upon the stock. All of this occurred long before such declaration was made by the appellee. This being true, it does not occur to us that they were misled into doing the very thing they were proposing to do before the declaration was made. Nor does it appear that the appellants took the mortgage relying upon such declaration.

The case of *Preston* v. *Witherspoon*, 109 Ind. 457, relied on in the majority opinion does not in my judgment support the position of the appellants. There "Runcie & Wallace" were engaged in selling and shipping wheat and receiving wheat for storage for hire from farmers and on demand of the depositors they agreed "to return to them wheat of a like kind, quality and amount as that deposited, *but not the identical wheat.*" There was a direct authority given by the depositors to Runcie & Wallace to sell their wheat in the very manner in which it was sold, and of course the depositors could not assert title to it after it had passed into the hands of innocent purchasers. The principles of that case have no application to the case at bar. Here the right to sell at retail is conceded, but the sale was not at retail. There is not a shadow of evidence that William Klinsick had any authority to mortgage the property or sell at wholesale, as the agent of appellee. Nor do I consider the cases to set aside fraudulent conveyances and to subject property to sale on execution in point. In such cases the effort is to reach specific property for a specific purpose.

VOL 13—18

The jury found that Willian Klinsick was not the owner of the property. This being true, the appellee was the owner prior to the execution of the mortgage. The title could only pass from her to appellants by some act of hers or of her authorized agent. There is no pretense that she made a sale or mortgage in person. Her husband sold goods only at retail. On no other occasion did he mortgage or sell at wholesale. Appellants could not therefore be misled as to his power. I repeat a power to retail does not confer power to mortgage or sell at wholesale. As William Klinsick did not own the goods and as he had no authority to mortgage or sell at wholesale, the rights of the appellants were only such as a general creditor has in the property of his debtor. One general creditor has no right to convert the property of his creditor to his own use and then defend on the ground of the indebtedness. That is what this case is in a nutshell. The creditor has no absolute right to the property of his debtor even when levied on by an execution. The debtor is entitled to exemption. The indebtedness will not justify or excuse the tort in converting the property. Let it be conceded that the appellants sold goods to William Klinsick upon the faith and belief that he was the owner of the stock of drugs; this fact would give them no specific interest in the property, nor would they have any specific interest in it if William Klinsick were the actual owner. William Klinsick might have legitimately applied the property to other purposes than the payment of appellants' claim. He might have taken it under the exemption laws; he might have used it to pay his other legitimate debts or assigned it for the benefit of all of his creditors. The same is true of Mrs. Klinsick, if she were the owner. The mere fact that the appellants may have been misled in giving credit cannot operate in conferring title in them to the property of the

ostensible owner. Creating a debt and transferring title to property are two distinct and separate acts. When the appellants gave the credit and their claims came into existence, that was a completed transaction wholly independent of the mortgage, the mortgage at that time was not even in contemplation; and yet the estoppel sought to be invoked ties the giving of the credit with the execution of the mortgage and makes them parts of the same transaction, ignoring all the rights of the debtor and the disposition which he might make in the interval between the two acts. The moment the two acts are separated the weakness of appellants' position is apparent.

The case of *McGirr* v. *Sells*, 60 Ind. 249, is a much stronger case in its facts than the one at bar, and as I think correct in principle. The appellee ought not be placed in a worse position or the appellants in a better position than if this were an action to set aside a fraudulent conveyance. And yet this will be the result if appellants prevail. The appellee will be stripped of her rights of exemption.

Filed June 22, 1894.